Timothy L. Alger, State Bar No. 160303
TAlger@perkinscoie.com
Sunita Bali, State Bar No. 274108
SBali@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Attorneys for Plaintiffs
Facebook, Inc. and Facebook
Ireland Limited

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

C 13  0459   PSG

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, and FACEBOOK IRELAND LIMITED, an Irish company,<br><br>Plaintiffs,<br><br>v.<br><br>PROFILE TECHNOLOGY, LTD, a New Zealand company; and CHRISTOPHER CLAYDON, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs Facebook, Inc. and Facebook Ireland Limited (collectively "Facebook"), by and through undersigned counsel, hereby allege as follows:

## I.  INTRODUCTION

1. Facebook permits certain application developers to access and use information that is available on Facebook's services, provided that they agree to and comply with Facebook's user and developer agreements. Profile Technology Ltd. ("Profile Technology") and its CEO, Christopher Claydon ("Claydon") (collectively "Defendants"), obtained access to such data as

COMPLAINT AND DEMAND FOR JURY TRIAL

part of their contractual relationship with Facebook. The data included information posted by and about Facebook users ("User Data").

2. Defendants copied User Data onto Defendants' computer servers for their own use and made it accessible to others, for Defendants' commercial benefit, on Defendants' website, www.profileengine.com. Defendants violated Facebook's terms (a) by retaining and continuing to display outdated User Data, despite Defendants' contractual obligation to keep User Data up-to-date, and (b) by refusing to delete stored User Data after the end of Defendants' relationship with Facebook. These breaches of Defendants' agreement with Facebook injured Facebook. Facebook has terminated Defendants as an approved application developer, and removed their applications from Facebook's services.

3. Defendants have refused Facebook's demands to stop using and making available to others User Data, and to return it to Facebook or destroy it. Defendants have informed Facebook that they will agree to the return or destruction of the User Data only if Facebook reinstates them as a Facebook Developer and makes their applications available again on Facebook's services.

4. Facebook seeks injunctive relief to stop Defendants' continued retention and use of User Data, and an award of damages, restitution and disgorgement.

## II.  PARTIES

5. Plaintiff Facebook is a Delaware corporation with its principal place of business in Menlo Park, California.

6. Plaintiff Facebook Ireland Limited is an Irish company with its principal place of business in Dublin, Ireland.

7. On information and belief, Defendant Profile Technology is a New Zealand company with its principal place of business in Auckland, New Zealand.

8. On information and belief, Defendant Claydon is a New Zealand resident and CEO of Profile Technology.

## III.  JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

10. There is complete diversity of citizenship between the parties.

11. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The "value of the object of the litigation," *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 345 (1977), exceeds the jurisdictional amount. The contractual interest at stake in this litigation is of significant value to Facebook, as Defendants' breach has interfered with Facebook's business, and has harmed Facebook's valuable reputation and goodwill among the public and Facebook's users.

12. This Court has personal and subject matter jurisdiction over Defendants and the claims alleged in this action because Defendants agreed to comply with Facebook's Developer Terms of Service (later termed "Platform Policies," collectively "Developer Terms"), and Site Terms of Use (later called the "Statement of Rights and Responsibilities," collectively "Statement"), which designate the courts located in Santa Clara County, California as the forum for resolving claims arising from breach of Facebook's Statement or Developer Terms.

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this district and because Defendants agreed to comply with Facebook's Developer Terms and Statement, which designate the courts located in Santa Clara County, California as the forum for resolving claims arising from breach of Facebook's Statement or Developer Terms.

## IV. FACTS

### A. Facebook Background and Service

14. Facebook offers an online social networking service that enables people to connect and share with their friends, family and coworkers. The company's technologies facilitate the sharing of information through the social graph—a digital mapping of people's real-world social connections. As of the filing of this Complaint, more than one billion people use Facebook each month.

15. Facebook hosts content that its users post on Facebook's site, and makes that content available (subject to limitations set by the content owners) to third-party application developers called "Facebook Developers." Facebook operates a "development platform"

3

COMPLAINT AND DEMAND FOR JURY TRIAL

("Platform" or "Facebook Platform"). This is the technological medium that enables Facebook Developers to run programs, applications and websites that, with users' consent, interact with data on Facebook's website, including the content posted by Facebook's users.

16. To access the features of Facebook's services, including the ability to access and use the Facebook Platform, a person must sign up, provide his or her name, establish a username and password, and agree to the terms and conditions contained in Facebook's Statement, whereupon Facebook assigns the user a unique Facebook ID, account, and personal profile template. Facebook Developers must establish a Facebook Account.

17. Registered Facebook users can populate their personal "Timelines" (formerly called "Profiles") with information about themselves, including their Timeline photo, contact details, education and work history, and other information. They can change this information at any time.

18. Facebook users can invite other Facebook users to become their "friends" on Facebook by sending them "friend requests." If the recipient of a friend request accepts the request, the two users' Timelines are connected as Facebook "friends." In general, Facebook users use the Facebook "friend" requests to designate the Facebook users with whom they want to interact on Facebook's site or through Facebook's services.

19. Facebook users can restrict access to the information in their Timelines using Facebook's privacy settings. These settings allow Facebook users to designate who can view information that they post to their Timelines. Currently, a user's name, username, user ID, gender, networks, and profile and cover photographs are available to anyone that has permissions to view a user's profile page. Other information can, at the user's option, be set to "public" or restricted for viewing only by a user's Facebook friends, Facebook friends of friends, or a customized subset of people. These privacy settings can be changed at any time, and Facebook's services are designed to adhere to these settings.

20. Facebook permits Facebook Developers to access and interact with the content hosted on its site through the Facebook Platform, subject to and restricted by Facebook's Developer Terms. The Platform includes a set of application programming interfaces ("APIs")

and other services that enable third-party applications ("Facebook Applications") to interact with Facebook's services.

21. The APIs and services relevant to this Complaint permit Facebook Developers to retrieve, in an automated fashion, publicly available information from Facebook Timelines.

22. Facebook also provides the software code for several "social plugins" that website designers can embed on their own websites to facilitate interaction with the Facebook Platform. For example, the Facebook "Like" button is a social plugin that, when clicked on a third party website by a Facebook user, connects that user's Timeline to the particular page where the Like button was placed. A link to that webpage is thereafter listed on the user's Timeline along with any other web pages that the user "Liked." Similarly, the Facebook "Share" button is a social plugin that, when clicked on a third party website, opens a Facebook dialogue box that will post a link to that webpage on the user's Timeline and will share that link with the Facebook user's Facebook friends.

23. Facebook permits users to delete or deactivate their Timelines. Deactivated Timelines are removed from public view but may be later reinstated. Deleted Timelines are removed from public view and thereafter deleted from Facebook's servers. Facebook users also have the option to change and delete photos and posts on their Timelines.

24. When users select privacy settings for particular information that are more restrictive than "public," that particular information is generally unavailable for indexing, or to Facebook Developers for retrieval, unless a user specifically grants them access to the information in the context of a Facebook Application. Similarly, once a Timeline is deleted or deactivated, un-cached content is no longer publicly accessible.

**B.  Defendants Agreed to Terms Controlling Access to Facebook and User Data**

25. All Facebook users, including Defendants, agree to comply with the Statement when they create a Facebook account or access the Facebook website. A true and correct copy of Facebook's current Statement is incorporated here by reference as if stated in its entirety and attached as **Exhibit A**.

26. At all times relevant to this Complaint, Defendant Claydon was a registered Facebook user, bound by his agreement to abide by Facebook's Statement. Defendant Claydon was also a Facebook Developer, and operated a developer account on behalf of, and for the purposes of, operating his business, Profile Technology, and the ProfileEngine.com website. In exchange for permission to use the Facebook Platform, Defendants agreed to Facebook's Developer Terms.

27. The Developer Terms in effect when Defendants began using the Facebook Platform to develop applications and to index Facebook Profiles (now called "Timelines," but referred to as "Profiles" herein when describing Defendants' past activities) were the Developer Terms dated June 1, 2007 ("June 2007 Developer TOS"). A true and correct copy of the June 2007 Developer TOS is incorporated here by reference as if stated in its entirety and attached as **Exhibit B**.

28. The June 2007 Developer TOS provided, among other provisions, that:
   a. developers could store user Profile information no more than 24 hours;
   b. developers had to delete information they had retrieved from the Facebook Platform upon notice from Facebook or upon termination of use or participation in the Facebook Platform;
   c. user Profile information could not be displayed to anyone that would not have been able to access it through the Facebook site;
   d. Facebook had the right at any time to terminate a developer's license and demand that all data be deleted; and
   e. Developers had no independent rights of use, separate from those articulated in the terms, to the Facebook information that they retrieved from the Facebook Platform.

29. The June 2007 Developer TOS, stated in capitalized, conspicuous language that if Facebook modified the Developer Terms, and the modifications were unacceptable to the developer, then the developer's "ONLY RECOURSE IS TO STOP USING THE FACEBOOK PLATFORM," and that "CONTINUED USE OF THE FACEBOOK PLATFORM FOLLOWING

OUR POSTING OF A CHANGE NOTICE OR NEW AGREEMENT ON OUR SITE WILL CONSTITUTE YOUR BINDING ACCEPTANCE OF THE CHANGE."

30. Facebook has modified the Developer Terms on several occasions since 2008. Each subsequent version of the Developer Terms contained the restrictions listed in paragraphs 27 through 29 or terms substantially similar thereto until April 2010, when the 24-hour retention term was modified to include the requirement that Developers keep cached data for use in improving the application's user experience up-to-date. The April 21, 2010 version of the Developer Terms is attached as **Exhibit C**.

31. By developing and operating applications on the Facebook Platform until their developer accounts were terminated by Facebook in November 2011, Defendants became and continue to be bound by the Facebook Developer Terms and Facebook Statement.

**C.     Defendants' Business and Use of Facebook Platform**

32. Defendant Claydon became a Facebook Developer in 2007, and developed Facebook applications, both in his individual capacity and as a representative of Profile Technology, that were designed to access Facebook data through the Facebook Platform.

33. Defendants operate a website located at www.ProfileEngine.com called "Profile Engine."

34. Profile Engine permits visitors to search for people by entering criteria like first and last name, address, distance from a particular city or zip code, and gender. The search results can be narrowed by a number of other filtering criteria such as "Fan clubs," schools, countries, cities and places, religious affiliation, relationship status, workplace or employer, social groups, and interests (music, movies, hobbies, etc.). On information and belief, these searches and filters are applied to User Data now held on Defendants' servers, which was obtained by Defendants from the Facebook Platform.

35. In March 2008, defendant Claydon approached Facebook on behalf of Profile Technology, seeking permission to use Facebook APIs to retrieve User Data and index it for use by Profile Engine. Facebook authorized Defendants' use and access to Facebook's APIs and

whitelisted Profile Technology's IP addresses and user agent so that Profile Technology's high volume of requests for User Data would not be blocked.

36. On information and belief, between March 2008 and October 2010, Defendants retrieved, copied and indexed User Data. *See* screenshot from http://profileengine.com/#/about attached as **Exhibit D**.

37. Defendants claim to have stopped accessing the Facebook Platform for indexing purposes in October 2010, after Facebook modified its terms to provide additional protections to data posted by Facebook users. *See* Facebook Automated Data Collection Terms, **Exhibit E**. Defendants claim that they decided to stop their activities because they were unwilling to agree to these terms. However, on information and belief, Defendants continued to access the Facebook Platform by automated means and retrieved Facebook user information after October 2010. As of the date of filing this Complaint, the Profile Engine site displays information that was posted to Facebook after the October 2010 date on which Defendants claim to have stopped retrieving data.

38. On information and belief, at no time have Defendants kept their storage of User Data up-to-date, as required by agreement. Further, Defendants did not delete User Data after they claim to have stopped accessing the Facebook Platform in October 2010. Further, Defendants did not delete User Data after Facebook terminated their account and revoked their limited license to access Facebook's platform in November 2011 (as more fully described below). Instead, Defendants have expressly and repeatedly refused Facebook's demands that they return or delete User Data.

39. Defendants continue to use and display out-of-date User Data to this day. Public display of User Data that is no longer current is inconsistent with Facebook's services, breaches agreements with Facebook, is contrary to the mutual understanding and intention of Defendants and Facebook when they entered into business dealings and injures Facebook's goodwill and reputation.

40. This old, unlawfully retained information includes a user's name as entered on Facebook, the Facebook user's Profile photo, the Facebook user's username, lists of the Facebook user's friends (with links to the data Defendants stored about their own Facebook Profiles), lists

8

with links to the data Defendants stored about each of the Facebook groups and Pages to which the user connected his or her Profile at the time of indexing, and the Facebook user's school, work, and location information as entered on Facebook. User Data displayed by Profile Engine does not reflect current privacy or search settings of many Facebook users. User Data displayed by Profile Engine also may include postings that Facebook users have deleted from Facebook's services, and which they no longer wish to be public, or available on the Internet at all. User Data displayed by Profile Engine may, in many circumstances, be incorrect because of changes made by users over the course of time.

41. Facebook became aware that Profile Engine was displaying old User Data when people started complaining to Facebook. In November 2011, after determining that Defendants had breached and were continuing to breach their agreements with Facebook, Facebook revoked Defendants' license to access Facebook and the Facebook Platform, and demanded that Defendants stop displaying outdated User Data, and demanded that Defendants delete all of Facebook user information in its possession.

42. Rather than complying with their agreements with Facebook, Defendants refused to stop displaying User Data on the Profile Engine site, and Defendants refused to delete or return to Facebook any User Data.

43. On information and belief, Defendants continued to access Facebook until at least May 2012. The Profile Engine site displayed a small toolbar at the bottom of its search results page that was powered by a Facebook Application owned and operated by a third party called "Wibiya." The toolbar displayed the Facebook "Connect" and "Like" buttons. When visitors to the Profile Engine site clicked on these buttons, they were asked to connect their Facebook Timelines to the Wibiya Facebook application. If Facebook users did so, then it appears that the Wibiya application would then retrieve the Facebook user's data on Defendants' behalf, despite the fact that Defendants' license to access Facebook or its services has been revoked since November 2011.

D. **Harm to Facebook**

44. Defendants' use of outdated User Data has tainted the Facebook experience for

Facebook users, and Facebook has suffered and continues to suffer harm to its reputation and goodwill due to Defendants' actions.

45. Facebook has suffered damages attributable to the efforts and resources it has used to address user complaints, and attempting to stop Defendants' injurious activities.

46. Defendants have been unjustly enriched by their activities at the expense of Facebook, and by means of traffic to and advertising on web pages used by Defendants to display User Data that was obtained, retained, and displayed in breach of Defendants' agreements with Facebook.

## V. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION - BREACH OF CONTRACT

47. Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

48. Access to and use of the Facebook Platform is governed by and subject to Facebook's Developer Terms.

49. Defendants accepted and agreed to Facebook's Developer Terms, which were binding on Defendants at all times after their initial use of the Facebook Platform. The Statement and Developer Terms are designed to protect the expectations and privacy of Facebook's users, including respect for Facebook users' current privacy settings or other elections regarding the retention and display of their information.

50. Facebook has performed all conditions, covenants and promises required of it in accordance with the Developer Terms.

51. Defendants, through their actions as described above, knowingly, willfully, repeatedly, and systematically breached and continue to breach Facebook's Statement and Developer Terms through their conduct as alleged in this Complaint.

52. Defendants' breaches directly and proximately caused and continue to cause Facebook irreparable and incalculable harm and injury to Facebook and its users.

///

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Facebook prays for the following relief:

A. For a preliminary and permanent injunction:

1. requiring Defendants to delete all data collected directly or indirectly from Facebook, with independent verification obtained at Defendant's expense;

2. restraining Defendants from accessing, collecting, retaining, or displaying any data obtained directly or indirectly from Facebook's website, services, Platform and computer systems;

3. restraining Defendants from accessing or using, or engaging third parties to access or use any of Facebook's technology, including but not limited to, Facebook social plugins such as the Facebook "Connect," "Share" or "Like" buttons;

4. restraining Defendants from accessing, or engaging third parties to access, Facebook's website, services, Platform and computer systems;

5. restraining Defendants from engaging in any activity that violates Facebook's Statement or Developer Terms; and

6. requiring Defendants to remove all references to Facebook, including but not limited to, Facebook profiles/Timelines and Facebook logos, from ProfileEngine.com.

B. An order requiring Defendants to account for, hold in constructive trust, make restitution, pay over to Facebook, and otherwise disgorge all profits derived by Defendants from their unfair and unlawful conduct and unjust enrichment, as permitted by law;

C. An award to Facebook of damages as permitted by law and in such amounts to be proven at trial;

D. For pre- and post-judgment interest as allowed by law;

E. For attorneys' fees and costs to the extent allowed by law; and

F. For such other relief as this Court may deem just and proper.

DATED: February 1, 2013

PERKINS COIE LLP

By: ___Timothy L. Alger/sb___
Timothy L. Alger

Attorneys for Plaintiffs
Facebook, Inc. and Facebook Ireland Limited

## VII. DEMAND FOR JURY TRIAL

Plaintiffs Facebook, Inc. and Facebook Ireland Limited demand a jury trial as to all issues so triable in this action.

DATED: February 1, 2013

**PERKINS COIE LLP**

By: *Timothy L. Alger /sb*
Timothy L. Alger

Attorneys for Plaintiffs
Facebook, Inc. and Facebook Ireland Limited