Timothy L. Alger, State Bar No. 160303
TAlger@perkinscoie.com
Sunita Bali, State Bar No. 274108
SBali@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Attorneys for Plaintiffs
Facebook, Inc. and Facebook
Ireland Limited

Ira P. Rothken, State Bar No. 160029
ira@techfirm.net
Jared R. Smith, State Bar No. 130343
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA  94949
Telephone: (415) 924-4250
Facsimile:  (415) 924-2905

Attorneys for Defendants
PROFILE TECHNOLOGY, LTD and
CHRISTOPHER CLAYDON

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, and FACEBOOK IRELAND LIMITED, an Irish company, | Case Number: **5:13-cv-00459-PSG** |
| Plaintiffs, | JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER |
| v. | |
| PROFILE TECHNOLOGY, LTD, a New Zealand company; and CHRISTOPHER CLAYDON, an individual, | **CMC DATE: 5/21/2013**<br>**CMC TIME: 10:00 a.m.**<br>**Courtroom 5, 4th Floor**<br>**Magistrate Judge Paul S. Grewal** |
| Defendants. | |

Page **1** of **14**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-9.


1.  Jurisdiction & Service
*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

Facebook and Facebook Ireland Limited (collectively, "Facebook," to which collective reference Defendants object as set forth in their pending motion to dismiss, as the rights and obligations of each individual Facebook entity must be clearly defined and, accordingly, Defendants interpret "Facebook" to refer to Facebook, Inc. until otherwise demonstrated to be all-inclusive) allege that the Court has subject matter jurisdiction over Facebook's claims pursuant to 28 U.S. C. § 1332(a), alleging that there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000.  The parties do not dispute personal jurisdiction or subject matter jurisdiction, but Defendants dispute that Facebook's claims are worth in excess of $75,000 and further reserve the right to move to compel arbitration as to some or all issues.


2.  Facts
*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

**[The following facts are subject to Defendant's reservation of rights to supplement with additional facts in the event they file a responsive pleading and counterclaims with additional relevant facts.]**

Facebook offers an online social networking service.  Facebook hosts content that its users post on Facebook's site, and makes that content available (subject to limitations set by the content owners) to third-party application developers called "Facebook Developers."  Facebook operates a "development platform" ("Platform" or "Facebook Platform"), which is the technological medium that enables Facebook Developers to run programs, applications and websites that, with users'

*Form updated November 2012*

consent, interact with data on Facebook's website, including the content posted by Facebook's users.

Profile Technology, Ltd. is a developer of social networking applications, including the "IQ Test," "Survey, Petition and Polling" applications that were popular for several years on various social networking sites including Facebook's social networking system.  Prior to January 1, 2008, using data voluntarily provided directly to Profile Technology by millions of people and not specifically sourced from Facebook, Profile Technology developed "Advanced Search," a powerful, flexible search engine for social network data providing a unique range of features not available on any other product.

In or about February, 2008, Profile Technology requested approval to access Facebook to index publicly-available portions of Facebook's site.  In or about March, 2008, Philip Fung, a Facebook employee, responded to Profile Technology's request and approved such access by whitelisting the Internet Protocol Address ("IP Address") that Profile Technology intended to use to perform its indexing functions.  Profile Technology's search engine, using an automated software script, "crawled" the public parts of the Facebook website, copied and stored data from those parts of the Facebook website on Profile Technology's own servers, and made such data searchable by users of Profile Technology's website, located at www.profileengine.com.  Profile Technology alleges that it merged the data it copied from Facebook with data that had been collected and stored by its prior search engine database.

Facebook alleges that, on or about November 8, 2010, Facebook sent a communication to defendants advising them that Facebook had decided to cease offering IP Address whitelisting for any entity that was not included in Facebook's "robot.txt" file, and further advised defendants that Facebook had decided to "be[] more conservative about adding new IP [addresses] or user agents" to the robot.txt file.  Facebook alleges that Profile Technology's IP address was not included in the robot.txt file.  Facebook alleges that on December 30, 2010, Facebook sent Profile Technology correspondence explaining that the only method for accessing Facebook's website for "crawling" purposes was to apply to have

*Form updated November 2012*

an IP address added to the robot.txt file.  Facebook alleges that Profile Technology did not agree to submit to the application process, and instead requested that its whitelist status be renewed.  Facebook declined, and alleges that at that time it also told Profile Technology that it must delete the data it had acquired from its previous crawling activities.

In or about October 2011, Facebook alleges that it received complaints from users that their Facebook information appeared on Profile Technology's site, www.profileengine.com. Since that time, Facebook alleges that it has received complaints from Facebook users about the fact that their profile data was displayed on Profile Technology's site.  On October 31, 2011, Facebook's counsel sent a letter to Christopher Claydon, which defendants allege they did not see until November 4, 2011, demanding that Facebook profile data be removed from www.profileengine.com and deleted.  Facebook alleges that, through that correspondence, it also revoked defendants' licenses to access Facebook's website and development platform, and Facebook alleges that it took technical measures to deactivate Claydon's Facebook account and other Facebook applications.  Facebook alleges that when defendants refused to comply with the demands of Facebook's letter, Facebook blocked all links on Facebook to Profile Technology products and de-authorized Profile Technology's Facebook applications such as the "IQ Test."   Facebook further alleges that when Facebook users tried to click on links to www.profileengine.com from the Facebook website, they were presented with an interstitial webpage that warned them that "This link has been reported as abusive . . . The link you are trying to go to has been reported as abusive by others on Facebook.  For your safety we've blocked it."  If users tried to post links to www.profileengine.com, they were presented with a smaller interstitial webpage that stated: "The content you're trying to share includes a link that's been blocked for being spammy or unsafe."

On October 10, 2012, Profile Technology and Christopher Claydon filed a Complaint in San Mateo County Superior Court, Case No. CIV 517219, and delivered a courtesy copy to Facebook's counsel at Perkins Coie LLP, but did not formally serve Facebook with the complaint.  The complaint alleged breach of contract, interference with business relationships,

*Form updated November 2012*

1  defamation, and unlawful, unfair and fraudulent business practices.

2       On or about February 1, 2013, Facebook filed and served the complaint in this action.

3  The complaint alleges breach of contract.

4

5  3. <u>Legal Issues</u>

*A brief statement, without extended legal argument, of the disputed points of law, including*
*reference to specific statutes and decisions.*

7       The legal crux of this case (subject to potential counterclaims which defendants may file at

8  the appropriate time) is whether the whitelisted access to Facebook's website that defendants used

9  to copy data to their own servers and to present on their own website was governed by Facebook's

10  Statement of Rights and Responsibilities and Developer Terms of Service (now called "Platform

11  Policies") or by a separate agreement memorialized between Philip Fung, on behalf of Facebook,

12  and Christopher Claydon.

13       Facebook alleges that at all times, Claydon and Profile Technology interacted with

14  Facebook as a Facebook Developer, subject to the Facebook terms governing developers.  Under

15  those terms, (a) Defendants do not own the data they copied from Facebook, (b) Defendants were

16  required to comply with Facebook's terms, even when they were subsequently modified, (c) when

17  Defendants stopped accessing Facebook, or their access privileges were revoked, they were

18  required to delete the data they collected from the Facebook site, and (d) Facebook could, at its

19  own discretion, decide to revoke or terminate a user's/developer's access privileges to its site and

20  development platform.

21       Defendants allege that their interaction with Facebook with respect to having their IP

22  Address whitelisted for purposes of crawling the Facebook website and copying data therefrom

23  was not done as a Facebook Developer, and was not subject to the terms of the Facebook

24  Statement of Rights and Responsibilities or Developer Terms of Service, but rather that the

25  exchanges of communications between Philip Fung and Christopher Claydon constituted the

26  formation of a separate contract, the terms of which were memorialized by the parties' pattern of

27  behavior subsequent to the time when Facebook added Profile Technology's IP addresses to the

28  whitelist.  Defendants allege that they have rights to use the data they copied from Facebook, and

Page **5** of **14**

that they are not obligated to comply with any demands that Facebook issues regarding the use of such data.

In the alternative, defendants allege that if the Statement of Rights and Responsibility and Developer Terms were the operative contracts, that the communications between Philip Fung and Christopher Claydon constituted modifications or amendments to those contracts that provided Defendants an unfettered right to copy, keep and use the data that they copied from the Facebook website.

Defendants further allege that, regardless of any agreement that may be found applicable in this case, there is data that Facebook has demanded Defendants delete that Defendants have a right to retain, including, but not limited to, data obtained directly from users or other manner and method that Facebook has no right to control and certain types of data, such as core data, including, but not limited to user name, date of birth and email that Defendants allege Facebook has acknowledged could be retained.

Facebook also alleges that Defendants were bound by the terms of the Facebook Automated Data Collection Terms, which were last updated on April 15, 2010.  These terms forbid the use of any automated software to crawl or copy data from the Facebook site without Facebook's express written consent.  For users that obtain such written consent, these terms require that the user delete and destroy data that is copied from Facebook upon Facebook's request, that they provide a complete accounting of the data they copied from the Facebook site within ten days of a request from Facebook, and that they stop crawling the Facebook website or collecting data from the Facebook website upon Facebook's request.  Defendants dispute that they are bound by these terms and refuse to delete the data they copied from the Facebook site or to provide an accounting of such data to Facebook.

4.  Motions
*All prior and pending motions, their current status, and any anticipated motions.*

Defendants' motion to dismiss Facebook Ireland Limited is pending and scheduled to be heard at the time of the Case Management Conference.  Both sides anticipate filing motions for

*Form updated November 2012*

summary judgment following discovery.  Defendants are considering filing a motion to compel arbitration as to some or all issues.

The parties expect to submit a stipulated confidentiality protective order by the time of the Case Management Conference.

5. Amendment of Pleadings
*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

Defendants' motion to dismiss Facebook Ireland Limited is pending and scheduled to be heard at the time of the Case Management Conference.  Defendants expect to file an answer and possible counterclaims following resolution of motions to dismiss.

6. Evidence Preservation
*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

The parties certify that they have reviewed the ESI Guidelines and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7. Disclosures
*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.*

The parties have agreed to postpone initial disclosures to one week after the Case Management Conference in light of the pending motion to dismiss.

8. Discovery
*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).*

*Form updated November 2012*

No discovery has been taken to date.   Facebook believes that discovery should be narrowly streamlined in this case given the limited nature of this dispute.  Facebook intends to propound interrogatories, document requests and requests for admissions consistent with the federal rules.  It also anticipates taking the Rule 30(b)(6) depositions Profile Technology and Christopher Claydon and believes that both of those witnesses should appear for depositions in this district.  Defendants believe discovery will be much more involved than Facebook believes, including taking depositions of Philip Fung and other persons most knowledgeable for Facebook at various levels of authority during the period of 2008 through 2012 regarding Facebook agreements and custom and practice.  The parties anticipate production of various iterations of Facebook's Statement of Rights and Responsibilities, Developer Terms of Service, Platform Policies and Automated Data Collection Terms and copies of data copied by defendants from the Facebook website and platform.  The parties agree to follow the Federal Rules of Civil Procedure regarding discovery, including, but not limited to document requests and interrogatories.

9.  Class Actions
*If a class action, a proposal for how and when the class will be certified.*

      Not applicable.

10.  Related Cases
*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

      Profile Technology and Christopher Claydon filed a Complaint in San Mateo County Superior Court, Case No. CIV 517219, against Facebook, which action is expected to be dismissed upon filing of an answer and potential counterclaims in this action.

11.  Relief
*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

*Form updated November 2012*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facebook seeks injunctive relief in the form of an order compelling defendants to delete, erase and destroy any and all data collected from the Facebook website or platform and any data derived from such data, prohibiting defendants from accessing Facebook's website or platform, and from developing any applications that integrate with Facebook's website or other services.

Facebook also seeks damages calculated in two ways: (1) disgorgement of revenue and/or profit received by defendants as a result of their monetization of the data collected or copied from the Facebook website or platform and any data derived from such data, and (2) reputational damages measured on a per-profile basis, the amount of which will be determined by expert witnesses.

Defendants reserve the right to request relief at such time as it files any potential counterclaim in the action at the appropriate time.

12.  Settlement and ADR
*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The parties have engaged in independent settlement discussions.  An ADR telephone conference is scheduled for May 20,  2013.

13.  Consent to Magistrate Judge For All Purposes
*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.*    __X__ YES    ____ NO

14.  Other References
*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

Defendants reserve the right to move to compel arbitration as to some or all issues in this action.  Otherwise, the parties do not believe any other references are appropriate.

*Form updated November 2012*

15. Narrowing of Issues

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

The parties can work together to identify which versions of the Facebook Statement of Rights and Responsibilities, Developer Terms of Service, Platform Policies, and Automated Data Collection Terms are relevant to the litigation and stipulate to common language in those terms and polices that spanned various revisions of the same.

16. Expedited Trial Procedure

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

Not applicable.

17. Scheduling

*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

Plaintiffs Propose:

Designation of Experts:   August 9, 2013

Discovery Cutoff:   October 11, 2013

Hearing of dispositive motions:   November 15, 2013

Pretrial Conference:   November 25, 2013.

Trial:  December 10, 2013.

Defendants Propose (based on numerous issues, including, but not limited to, the pleading having yet to be resolved, all issues not yet identified and potential intervention of arbitration proceeding):

Designation of Experts:   November 8, 2013

Discovery Cutoff:   January 10, 2013

Hearing of dispositive motions:   February 14, 2014

*Form updated November 2012*

Pretrial Conference:   February 25, 2014.

Trial:  March 10, 2014.

18.  <u>Trial</u>
*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

The parties agree that the trial should be tried by a jury and that the expected length of the trial should not span more than one week.

19.  <u>Disclosure of Non-party Interested Entities or Persons</u>
*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

All parties certify that, as of this date, other than the named parties, there is no such interest to report.

20.  <u>Other</u>
*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

None.

*Form updated November 2012*

Dated: May 14, 2013                     PERKINS COIE LLP

                                        _/s/ Timothy L. Alger_____
                                        Timothy L. Alger

                                        Attorneys for Plaintiffs
                                        Facebook, Inc. and Facebook
                                        Ireland Limited

Dated: May 14, 2013                     ROTHKEN LAW FIRM


                                        /s/ Ira P. Rothken_____
                                        Ira P. Rothken,

                                        Attorneys for Defendants
                                        Profile Technology, Ltd and
                                        Christopher Claydon


## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]



IT IS SO ORDERED.

Dated:                          _____
                                    UNITED STATES MAGISTRATE JUDGE

Page **12** of **14**

*Form updated November 2012*