UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, and FACEBOOK IRELAND LIMITED, an Irish company,<br><br>                    Plaintiffs,<br>     v.<br><br>PROFILE TECHNOLOGY, LTD, a New Zealand company, and CRHSITOPHER CLAYDON, an individual,<br><br>                    Defendants. | Case No. 5:13-cv-0459-PSG<br><br>**ORDER GRANTING-IN-PART PLAINTIFFS' MOTION TO DISMISS**<br><br> **(Re: Docket No. 35)** |

In 2008, Christopher Claydon reached out to Facebook, Inc. to get permission to automatically "crawl" its website and gather user data,[1] and Facebook gave it to him.[2] A few years later, Claydon and his company, Profile Technology, Ltd., used that user data to create their own

---

[1] *See* Docket No. 35, ¶ 12.

[2] *See id.* at ¶ 13.

1

Case No. 5:13-cv-0459-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS**

website, "Profile Engine."[3] When Facebook found out that its user data was being kept, in stale form, on an independent website, it cancelled Claydon's account and denied Profile Technology further access to its site.[4]

Facebook then brought this suit seeking the return or destruction of the user data collected by Claydon and Profile. Claydon and Profile in turn brought counterclaims under California law for breach of contract, interference with business relationships, defamation, and unlawful business practices.[5] Facebook now moves to dismiss the claims for breach of contract, intentional interference, and unlawful business practices. Having reviewed the papers and considered the arguments of counsel, the court GRANTS Facebook's motion, but only IN PART.

# I.   LEGAL STANDARDS

## A.   Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[7] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence

---

[3] *See id.* at ¶ 47.

[4] *See id.* at ¶ 48.

[5] *See id.*

[6] Fed. R. Civ. P. 8(a)(2).

[7] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

2
Case No. 5:13-cv-0459-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS**

of sufficient facts alleged under a cognizable legal theory."[9]  "A formulaic recitation of the elements of a cause of action will not do."[10]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[11]  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[12]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[13]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear… that the complaint could not be saved by amendment."[14]

## II.   DISCUSSION

### A. Claydon And Profile's California UCL Claims Must Be Dismissed On Choice Of Law Grounds

In order to consider the substantive questions at issue, the court must first determine what jurisdiction's law governs the analysis.  Both parties agree that their business relationship began when Claydon registered for Facebook as an application developer in June of 2007, and they agree that the Facebook developer "Terms of Service" govern that relationship.[15]  Those terms include a provision that "[t]he laws of the State of Delaware, without regard to principles of conflict of laws, will govern this Agreement any dispute of any sort that might arise between [the signing party] and

---

[9] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[11] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[12] *See id.* at 1061.

[13] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[14] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[15] *See* Docket No. 35 at 4, Docket No. 38 at 2.

3
Case No. 5:13-cv-0459-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS**

Facebook."[16]  Claydon and Profile, however, argue in their papers that California's choice of law statute nevertheless bars the application of that clause, and Delaware law, in this case.[17]

"In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts [] apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions."[18]  Section 187 provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue."[19]  The California Supreme Court has determined that, as a matter of law, there is a substantial relationship between a party and a given state if the party is incorporated there.[20]

Because Facebook is incorporated in Delaware, in order to negate the choice of law clause in the developer Terms of Service, Claydon and Profile need to establish that the application of Delaware law runs contrary to a fundamental policy of California.  However, despite their conclusory statements to that effect, Claydon and Profile fail to identify which of California's "fundamental policies" would be violated by the application of Delaware law.  They also cite to no authority to support their conclusion that such a policy would be violated, and they acknowledge that the UCL's application here would not even advance California's general goal of protecting its citizens from unfair business practices, as Claydon is not a California citizen.  The court therefore

---

[16] Docket No. 35, Ex. B at 42.

[17] *See* Docket No. 38 at 23.

[18] *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992).

[19] Restatement (Second) of Conflict of Laws § 187 (1971).

[20] *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 467 (1992).

4
Case No. 5:13-cv-0459-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS**

finds that the choice of law clause of Facebook's developer Terms of Service is enforceable here, and Delaware law governs this action. On these grounds alone, Claydon and Profile's claims under California's Unfair Competition Law must be DISMISSED without leave to amend.

### B.  Breach of Contract

Claydon and Profile offer a breach of contract claim on two theories. First, they assert that their email communication with a Facebook employee created an independent contract which contained no restrictions on data use or provisions for unilateral termination; this contract was "partially written and partially implied through the conduct of the parties."[21] Second, and in the alternative, they argue that the email communication modified the pre-existing written contract in such a way that it implicitly revoked the termination provisions of the underlying agreement. Facebook characterizes the first argument as one based in quasi-or-implied contract, which has no force where a written contract exists on the same issues between the same parties. As to the second theory, Facebook argues that any modification of the terms of its written agreement with Claydon and Profile did not extend beyond those subjects explicitly addressed in the written modification.

For Claydon and Profile's first theory to hold up, they must first demonstrate that a contract was formed that contained terms that were later breached. Their theory of contract formation is premised on the concept that certain terms are expressly provided in writing, and others are implied from the conduct of the parties. The express terms are those contained in the emails: Claydon's right to crawl the Facebook sitemap for public profile data using a particular user agent, based on his representation of his company as an app developer. Any other terms, including the provisions regarding termination and notice that Facebook allegedly breached, were implied from the conduct of the parties.

---

[21] Docket No. 35 at ¶ 43.

5
Case No. 5:13-cv-0459-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS**

The problem with Claydon and Profile's theory is that under Delaware law, "an implied contractual obligation cannot flow from matters expressly addressed in a written contract."[22] Here, the Facebook developer Terms of Service, which Claydon and Profile agree governed the relationship at the time of the email exchange, include a provision on termination, which allows Facebook to "terminate your membership, delete your profile . . . and/or prohibit you from using or accessing the Service or the Site or any Platform Application (or any portion, aspect or feature of the Service or the Site or any Platform Application) for any reason, or no reason, at any time in its sole discretion, with or without notice."[23] This aspect of the relationship was therefore already governed by that written contract at the time of the email exchange, precluding the possibility of an implied contractual obligation to provide notice before termination. Claydon and Profile's theory based on a superseding contract with implied terms thus fails.

Claydon and Profile's alternative modification theory fares no better.[24] Given that nothing about that provision appears anywhere in the email exchange, this modification would also have to be implied from conduct and thus is precluded for the same reasons as the first theory. Because Defendants' "contract claim is based on the failure of Facebook to give reasonable notice" before termination, and they allege no other concrete violations, the breach of contract claim must be DISMISSED. Because the court is not yet persuaded that any amendment would be futile, this dismissal is without prejudice and with leave to amend. However, any amendment must advance a new theory of breach, as these two theories have been dismissed as a matter of law.

---

[22] *Good v. Moyer*, 2012 WL 4857367, at *5 (Del. Super. Oct. 10, 2012).

[23] Docket No. 35, Ex. B. at 41.

[24] *See* Docket No. 38 at 18.

**B. Intentional Interference with Business Relationships**

An intentional interference with business relationships claim under Delaware law requires "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner."[25] Facebook attacks the sufficiency of Claydon and Profile's pleadings here on two grounds. First, it argues that they do not sufficiently allege that Facebook knew or should have known about business relationships that may be impacted by its decision to terminate Claydon and Profile's access to Facebook's data. This, however, is plainly incorrect, as Claydon and Profile's counterclaim clearly alleges that "knowing of such [prospective] relationships and business opportunities, Counter-defendants disrupted and interfered with" their access to Facebook's data with the intent to embarrass them.[26] Although Facebook characterizes these allegations as "conclusory," such claims are sufficient with respect to knowledge and intent, even if the claim were subject to the heightened scrutiny of Rule 9(b).[27] The claim cannot be dismissed on those grounds.

Facebook's second argument for dismissal is that their actions were justified in light of their privilege to compete in the marketplace.[28] However, the question of whether a defendant's act was justified requires the application of a multi-factor balancing test and has been deemed "particularly factual;"[29] this makes it an inappropriate question for resolution on a motion to dismiss. Facebook

---

[25] *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981)."

[26] *See* Docket No. 33 at ¶¶ 65- 67.

[27] Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[28] *See* Docket No. 35 at 11.

[29] *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1154 (Del. 1981).

7
Case No. 5:13-cv-0459-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS**

hangs its hat largely on the fact that the contract governing its relationship with Profile and Claydon gave it the explicit right to terminate at any time,[30] but it has failed to provide the court with any governing law establishing such a per se rule. Without such a rule, a "particularly factual" balancing test cannot properly be disposed of at this stage of the litigation. Facebook's motion to dismiss this claim is therefore DENIED.

### III.   CONCLUSION

Facebook's motion to dismiss is GRANTED-IN-PART. Claydon and Profile's claim under California's Unfair Competition Law is dismissed with prejudice; as a matter of law, the statute giving rise to this cause of action is inapplicable, making any amendment futile. Their breach of contract claim is dismissed without prejudice and with leave to amend. The motion is DENIED as to the intentional interference with prospective business relationships claim. Any amended pleading shall be filed by March 4, 2014.

**IT IS SO ORDERED.**

Dated: February 5, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[30] *See* Docket No. 35 at 11.